IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| EDWARD DUCHENEAUX and MAE KELLER, as Co-Personal Representatives of the ESTATE OF PAUL DUCHENEAUX, DECEASED, <br><br> Plaintiffs, <br><br> vs. <br><br> LOWER YELLOWSTONE RURAL ELECTRIC ASSOCIATION, INC., a Montana Corporation d/b/a Lower Yellowstone Rural Electric Cooperative, et al., <br><br> Defendants. | CV 19-06-BLG-TJC <br><br> **ORDER** |

Plaintiffs Edward Ducheneaux and Mae Keller, as the co-personal representatives of the Estate of Paul Ducheneaux ("Plaintiffs"), bring this action against Lower Yellowstone Rural Electric Association, Inc., d/b/a Lower Yellowstone Rural Electric Cooperative ("LYREC") and Elliot Equipment Company ("Elliot"). Plaintiffs assert claims for wrongful death and survival based on negligence and strict liability, after Paul Ducheneaux was killed when the bucket lift truck in which he was working tipped over. (Doc. 24.) Presently before the Court is LYREC's Motion for Summary Judgment. (Doc. 60.)

Having considered the parties' submissions, the Court finds LYREC's Motion for Summary Judgment should be **DENIED**.

1

I.  **FACTUAL BACKGROUND**[1]

LYREC is a rural electric provider operating in eastern Montana and western North Dakota.  Midwest Power ("Midwest") is a utility construction company from North Dakota.  Paul Ducheneaux ("Ducheneaux") was an employee of Midwest, and was acting within the course and scope of his employment at the time of his death.  Elliott is a manufacturing company that assembles and installs aerial lift devices on existing truck chassis.  Midwest owned an Elliott manufactured ECG-4-85-B boom supported aerial lift that was mounted on a Navistar 4900 truck ("the Bucket Truck").  The bucket on the truck could be raised to a height of approximately 80 feet.  (Doc. 81-12.)  Other bucket trucks in Midwest's fleet could be raised to 100 feet.  (*Id.*)  The bucket trucks were stabilized when in use by deploying an outrigger system from the sides and front of the vehicle.

In April 2016, LYREC and Midwest entered into a contract to construct LYREC's Helmut-Iverson 115 kv Transmission Line in eastern Montana ("the Project").  The contract listed LYREC as the "Owner" and Midwest as the "Contractor."  The contract provided in part that "Construction Safety is exclusively the responsibility of the Contractor."  (Doc. 62-2 at 4.)

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motions for summary judgment and are taken from the parties' submissions and are undisputed except where indicated.

Midwest began work on the Project in May 2016.  On October 8, 2016, Ducheneaux was working approximately 50 feet above the ground in the Bucket Truck.  Workers at the site heard a loud bang, and the Bucket Truck tipped over, killing Ducheneaux.  Inspection of the Bucket Truck after the accident revealed a catastrophic metal failure and collapse of a portion of the outrigger system on the truck.  The parties dispute the cause and factors contributing to the collapse.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party.  *See Matsushita*, 475 U.S. at 587.

/ / /

/ / /

## III. DISCUSSION

LYREC argues that as a project owner, it does not owe a duty to the employee of an independent contractor, and therefore, is entitled to summary judgment. Plaintiffs counter that LYREC is both vicariously and directly liable for Ducheneaux's death because the work Midwest was performing at the time of his death was inherently dangerous. Elliott likewise argues LYREC is vicariously liable because the work was inherently dangerous, and also because LYREC retained control over Midwest.[2]

Plaintiffs' wrongful death and survival claims against LYREC are based on negligence and negligence per se for allegedly failing to inspect and maintain the outrigger system on the Bucket Truck. (Doc. 158 at 7-11.) Negligence requires proof of a legal duty, breach of that duty, causation and damages. *Poole ex rel. Meyer v. Poole*, 1 P.3d 936, 939 (Mont. 2000). The existence of a duty is a question of law determined by the court. *Morrow v. Bank of Am., N.A.*, 324 P.3d 1167, 1177 (Mont. 2014).

/ / /

---

[2] Notably, Plaintiffs do not contend LYREC retained control over Midwest. Indeed, they have never alleged the contractual control or negligently retained control exceptions to the general rule against vicarious liability apply in this action. The Court, therefore, need not reach Elliott's control argument, since that theory of liability is not advanced by Plaintiffs.

As a general rule, a project owner or general contractor does not have a duty to prevent injuries to an independent contractor's employees. *Beckman v. Butte-Silver Bow County*, 1 P.3d 348, 350 (Mont. 2000). Montana law, however, recognizes three exceptions to this general rule: "(1) where there is nondelegable duty based on a contract; (2) where the activity is inherently or intrinsically dangerous; and (3) where the general contractor negligently exercises control reserved over a subcontractor's work." *Id.*

At issue here is whether LYREC, as project owner, may be liable for the torts of Midwest because the injury arose out of work that is inherently dangerous. *Beckman*, 1 P.3d at 351. Whether an activity is inherently dangerous is a question of law. *Fabich v. PPL Montana, LLC*, 170 P.3d 943, 948 (Mont. 2007).

The Montana Supreme Court has looked to the Restatement (Second) of Torts for guidance in determining liability under the dangerous activity exception. *Beckman*, 1 P.3d 351. The relevant sections of the Restatement (Second) of Torts provide:

> **§ 416 Work Dangerous in Absence of Special Precautions**
>
> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer had provided for such precautions in the contract or otherwise.

**§ 427 Negligence as to Danger Inherent in the Work**

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

The Montana Supreme Court views these two sections as "essentially duplicative of each other" and considers their application together. *Beckman*, 1 P.3d at 351.

Contrary to LYREC's argument, application of these sections does not depend on whether "simple and straight-forward" precautions can be taken to address the safety concerns related to the work activity. (Doc. 61 at 4-5.) In *Beckman*, the Montana Supreme Court expressly overruled a series of cases in which the court had previously held activities were not inherently dangerous if relatively simple, standard safety measures could be taken to avoid the risks associated with the activity. *Beckman*, 1 P.3d at 353 (overruling *Kemp v. Bechtel Constr. Co.*, 720 P.2d 270 (Mont. 1986); *Kemp v. Big Horn County Elec. Co-Op, Inc.*, 798 P.2d 999 (Mont 1990); and *Micheletto v. State*, 798 P.2d 989 (Mont. 1999)). Instead, the court made clear that the determination of whether an activity falls within the inherently dangerous activity exception focuses on the nature of the work performed. *Id.* The court found an activity is inherently dangerous if it involves peculiar hazards which differ from the ordinary forms of negligence that

6

are usual in the community, and which call for particular precautions. *Id. See also Fabich,* 170 P.3d at 949 (risks caused by inherently dangerous activities are "hazards not ordinarily encountered in the community, which call for particular precautions."); Restatement (Second) of Torts § 416 cmt. d (explaining an activity does not have to be extra-hazardous or abnormally dangerous to be considered inherently dangerous; it is sufficient if it involves a peculiar risk of harm unless special precautions are taken, and defining a peculiar risk as "a risk differing from the common risks to which persons in general are commonly subjected by the ordinary forms of negligence which are usual in the community.").

The *Beckman* court cautioned, however, that not every activity on a construction site which could result in death or serious bodily injury is inherently dangerous. *Beckman*, 1 P.3d at 353. "Rather, an employer is only vicariously liable for those torts which arise from the unreasonable risks caused by engaging in that activity." *Id.* The court referenced the following example from the Restatement (Second) of Torts to illustrate the distinction. *Id.*; Restatement (Second) of Torts, § 416 cmt. d. If a contractor is hired to transport giant logs over the highway, the employer is not liable for torts caused by the contractor's failure to inspect the brakes on his truck or for driving in excess of the speed limit. *Id.* This is because the risk is not particular to transporting logs, but is an ordinary form of negligence that is usual in the community, and which requires only

7

ordinary or standard precautions.  *Id.*  But the employer would be vicariously liable for the contractor's failure to take special precautions to anchor the logs to the truck.  Transporting giant logs creates an uncommon hazard that the logs could become disengaged, and calls for particular precautions to prevent its occurrence.  *Id.*

Accordingly, the nature of the work performed here must be assessed to determine if it constitutes an inherently dangerous activity.  LYREC argues that this inquiry should not focus on bucket truck operation.  (Doc. 87 at 2.)  It maintains that LYREC did not contract for the operation of a bucket truck.  (*Id.*)  Rather, it contracted for the construction of a power line, and LYREC contends the analysis should consider whether powerline construction, in general, is inherently dangerous.  (*Id.*)  But §§ 416 and 427 both look to whether the employer should recognize at the time of contracting that the work to be performed inherently involves a peculiar risk of harm unless special precautions are taken.  When LYREC contracted to construct the transmission line, it was obviously aware that the work would involve the use of an aerial lift device, such as a bucket truck, and would place workers at heights that exposed them to potential death or serious bodily injury if appropriate safety precautions were not taken.  Therefore, the relevant question here is whether working from an aerial lift device to construct a transmission power line is an inherently dangerous activity.

It would appear readily apparent that hoisting workers 50-100 feet in the air to perform work activities involves peculiar hazards which call for particular precautions.  When done with the aid of a bucket truck, those peculiar risks include, among others, tip overs, structural failures, and falls from substantial heights.  (Doc. 81-22, OSHA fact sheet for aerial lifts.)  These risks also require special precautions, such as the use of personal protective equipment, operator training, regular inspection of the equipment, running test flights, and setting up the truck properly on firm and level ground.  (*Id.*)  The Elliott manual further demonstrates that the risks associated with tip overs and structural failures call for special precautions.  (Doc. 78-1 at 120-42.)  The manual establishes a protocol for daily walk around inspections, including checking the outriggers, visually inspecting under the vehicle, setting the outriggers and ensuring the unit is level, and performing a "preflight" operational check.  (*Id.* at 126-29.)  The manual also provides that weekly and monthly inspections must be performed.  (*Id.* at 137-40.)  These inspections include monthly checks for cracks and broken welds and inspections of the "boom section and outriggers for cracks, deep scratches or broken welds." (*Id.* at 137, 140.)  Additionally, warning labels were placed on the Bucket Truck itself, cautioning about the potential of the unit to tip over.  (*Id.* at 122-125.)

/ / /

9

Given the rather obvious risks involved, it is clear that operation of the Bucket Truck presented peculiar risks of physical harm which required the implementation of special precautions. Therefore, the Court finds the activity is inherently dangerous as a matter of law.[3]

Similar to the logging truck example in the Restatement, LYREC would not be vicariously liable for Midwest's failure to maintain the brakes on the Bucket Truck, or for driving the Truck at excessive speeds. Defective brakes and speeding do not pose an unreasonable risk that is particular to bucket truck operation. But failing to inspect or maintain the features of the Bucket Truck which are intended to prevent tip-overs relates directly to the core risk presented by the activity, and does give rise to vicarious liability.

Accordingly, the Court finds LYREC had a duty to Ducheneaux, and is potentially liable for Midwest's negligence. Plaintiffs, therefore, may pursue their vicarious liability claims against LYREC.

Plaintiffs also assert a theory of direct liability against LYREC. Plaintiffs argue LYREC is directly liable for Ducheneaux's death because it failed to require that Midwest take necessary precautions against the inherent risks associated with

---

[3] Previously, the Montana Supreme Court held that working in a bucket lift was not inherently dangerous. *Kemp v. Big Horn County Elec. Co-Op.*, 798 P.2d 999, 1004 (Mont. 1990). This holding, however, was expressly overruled by *Beckman*. *See Beckman*, 1 P.3d at 353.

bucket truck operation on the Project.

In *Beckman*, the Montana Supreme Court recognized that there is "another species of the inherently dangerous exception." *Beckman*, 1 P.3d at 354. The court explained that under § 413 of the Restatement (Second) of Torts[4], a project owner has a duty to provide precautions when the owner knows or should know that the work engaged in by the independent contractor is inherently dangerous. *Id.* The court clarified that "[t]his is a rule of personal or individual liability separate and distinct from an employer's vicarious liability under §§ 416 and 427." *Id.*

As discussed above, the Court has determined that bucket truck operation is an inherently dangerous activity. Therefore, LYREC may be liable to Plaintiffs under Restatement § 413 for physical harm caused by the absence of special precautions if it failed to provide in the contract that

---

[4] Section 413 of the Restatement (Second) of Torts provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
>
> (a) fails to provide in the contract that the contractor shall take such precautions, or
> (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

Midwest take the special precautions, or if it failed to otherwise exercise reasonable care to provide for the taking of such precautions.

LYREC has failed to establish the absence of a genuine issue of material fact with respect to either issue.  LYREC has pointed to a provision in its contract with Midwest which states "[t]he Contractor will adhere to all safety practices as described by O.S.H.A."  (Doc. 87 at 11.)  Nevertheless, LYREC has not identified the O.S.H.A. standards which may relate to the particular risks and special precautions at issue here.  LYREC has also not established any facts to show that it exercised reasonable care to provide in some other manner for the taking of the required special precautions.  On the contrary, LYREC emphasizes that its contract with Midwest provided that "[c]onstruction safety is exclusively the responsibility of the Contractor." (*Id.*)

Accordingly, since LYREC has not established the absence of any genuine issue of material fact relative to its potential liability under § 413, summary judgment on that claim is not appropriate.  Plaintiff may proceed on their theory of direct liability as well.  See e.g., *Beckman*, 1 P.3d at 354.

Although the Court has determined that bucket truck operation is an inherently dangerous activity, and therefore, LYREC had a duty to Ducheneaux, Plaintiffs must still prove their claims against LYREC under the ordinary rules of

negligence.  *Cobos v. Stillwater Min. Co.*, 2012 WL 6018147, *6 (D. Mont. Dec. 3, 2012).  Whether LYREC is ultimately vicariously or directly liable for Ducheneaux's death is a question of fact for the jury.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that LYREC's Motion for Summary Judgment (Doc. 60) is **DENIED.**

DATED this 3rd day of December, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge