IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| EDWARD DUCHENEAUX and MAE KELLER, as Co-Personal Representatives of the ESTATE OF PAUL DUCHENEAUX, DECEASED, | CV  19-6-BLG-TJC |
| Plaintiffs, | **ORDER** |
| vs. | |
| LOWER YELLOWSTONE RURAL ELECTRIC ASSOCIATION, INC., a Montana Corporation d/b/a Lower Yellowstone Rural Electric Cooperative, et al., | |
| Defendants. | |

A Motion Hearing was held in this matter on May 5, 2021.  The Court heard oral argument on Defendant Elliot Equipment Company's Motion in Limine Under Rule 702 (Doc. 127); Elliott's Motion in Limine Omnibus (Doc. 130); Elliott's Motion in Limine Daubert – Ellsworth (Doc. 133); Elliott's Motion in Limine Daubert – Bezzant (Doc. 136); Elliott's Motion in Limine Daubert – Medlin (Doc. 139); Plaintiffs' Motion in Limine 6-13 (Doc. 142); Plaintiffs' Motion in Limine 14-17 (Doc. 145); Plaintiffs' Motion to Strike LYREC Animation/Video and Objection to Use (Doc. 148); Plaintiffs' Motion to Strike LYREC's Affirmative Defenses (Doc. 193); and Elliott's Motion to Strike Plaintiffs' March 11, 2021 Expert Disclosures (Doc. 219).

1

## I.      MOTIONS IN LIMINE

Motions in limine are procedural devices that may be used to exclude anticipated inadmissible or prejudicial evidence before it is actually offered at trial.  *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).  Motions in limine, however, do "not lie to exclude broad categories of evidence."  *Acad. of Motion Picture Arts & Scis. v. Godaddy.com, Inc.*, 2015 WL 12697750, *2 (C.D. Cal. Apr. 10, 2015).  Rather, motions in limine must specifically "identify the evidence at issue and state with specificity why such evidence is inadmissible."  *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, 2010 WL 2035800, *1 (C.D. Cal. May 19, 2010). *See also Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("Orders in limine which exclude broad categories of evidence should rarely be employed.  A better practice is to deal with questions of admissibility of evidence as they arise.").

"A party cannot use a motion in limine to sterilize the other party's presentation of the case."  *Johnson v. Gen. Mills Inc.*, 2012 WL 13015023, *1 (C.D. Cal. May 7, 2012).  Motions in limine also should not be used to resolve factual disputes or weigh evidence.  *C & E Services, Inc., v. Ashland Inc.*, 539 F.Supp.2d 316, 323 (D. D.C. 2008).  To exclude evidence on a motion in limine, the evidence must be "clearly inadmissible on all potential grounds."  *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).  "Unless

evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Tech, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. K-Mart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

Rulings on motions in limine are provisional and "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce v. United States*, 469 U.S. 38, 41 (1984). Accordingly, the Court may readdress any of the parties' motions in limine as necessary at trial.

### A. Elliott's Motion in Limine Under Rule 702 (Doc. 127)

Elliott broadly seeks to exclude any opinions that require expert testimony from two lay witnesses – Steve Schlosser, the owner-operator of Midwest Power and Jason Brothen, the CEO of Lower Yellowstone Rural Electric Association, Inc. (LYREC). (Doc. 127.) For the reasons stated on the record, Elliot's Motion in Limine Under Rule 702 is **DENIED without prejudice**. Elliott may object to specific evidence at trial, and the Court will determine the admissibility of such evidence in light of the factual context in which it is offered.

**B.    Elliott's Omnibus Motion in Limine (Doc. 130)**

      a.    <u>Motion in Limine A</u>

Elliott broadly seeks to exclude any evidence of hypothetical post-accident remedial measures Elliot could have taken in response to this lawsuit. For the reasons stated at the hearing, the Court **GRANTS in part and DENIES in part** Elliott's Motion in Limine A.  The Court finds the motion should be granted with respect to Dr. Medlin's opinion that Elliott should issue a recall or "needs to verify that all boom truck assemblies in the marketplace do not have similar unsafe designs, unauthorized weldments, modified fasteners, and were fabricated with improper practices."  (Doc. 131 at 5.)  In all other respects, Motion in Limine A is denied without prejudice.

      b.    <u>Motions in Limine B-G, and J</u>

For the reasons stated on the record, the Court **DENIES without prejudice** the following Motions in Limine:

B.    Any statement concerning the "trial strategy" or the "real strategy" of Elliott's counsel;

C.    Prohibiting Plaintiffs or their counsel from offering any evidence by their retained expert(s) that is outside the scope of the written opinion produced during discovery;

D.    Prohibiting Plaintiffs or LYREC from offering any exhibits or evidence not produced or identified in discovery with the exception of information to be used for impeachment purposes only;

E.    Any statement that Plaintiff had "given a number of years of his life" to his employer or that Plaintiff had "given the best years of his life" to working for his employer;

4

F.  Any references to Plaintiffs having no other remedy or no
    other way to be compensated;

G.  Any questions by Plaintiff's counsel or testimony by a
    witness pertaining to a witness's opinion as to whether
    the witness believes another witness was or was not
    truthful;

J.  Evidence or argument related to discovery disputes that
    came up during the course of litigation including, claims
    that the documents were not produced, documents not
    ultimately required to be produced, additional tests that
    could have been performed but were not agreed upon by
    the parties, and other "legal" disputes, motions, or discovery
    during the course of the lawsuit.

c.  <u>Motions in Limine H-I, K-S</u>

Plaintiffs and LYREC did not oppose 11 of the Motions in Limine.

Accordingly, Elliott's Motion in Limine is **GRANTED** with respect to the

following:

H.  References to any insurance policy or insurance payments on
    policies held by Elliott.

I.  Settlement negotiations which have taken place at any time
    between Elliott and the Plaintiffs concerning the accident at
    issue in this case.

K.  Evidence or argument by any party, witness, or counsel in
    any way referring to the probable testimony of a witness who
    is absent, unavailable, or not called to testify in this case;

L.  Any reference to jury verdicts in other parts of the United
    States in civil or criminal actions;

M.  Any references or statements regarding what type of law
    counsel practices, including what type of clients or specific
    clients that counsel has represented;

N.  Any evidence or argument evoking anti-corporate or regional
    prejudice, such as characterizing Defendants as having
    neither conscience nor soul, insinuating or suggesting a
    witness is not credible because of that person resides outside
    of Montana or is an employee of either Defendant, or

5

referencing that Defendants or their counsel are not from
Montana;

O.    Any reference to the current job market, economic climate, or
unemployment rates;

P.    Any references to the financial status of Elliott or to the
financial disparity between the parties;

Q.    Any argument, comment, or suggestion that the jurors place
themselves in a position of either Plaintiffs or the Decedent
in assessing damages;

R.    Any evidence or argument relating to damages allegedly
sustained by third parties as a result of Defendant's alleged
conduct;

S.    Evidence or argument related to any alleged "immoral" act
by Defendants or relating to any person or party's religious
beliefs.

In sum, Elliott's Omnibus Motion in Limine (Doc. 130) is **GRANTED in part and DENIED in part** as to Motion in Limine **A; GRANTED** as to Motions in Limine **H, I, K, L, M, N, O, P, Q, R, and S**; and **DENIED without prejudice** as to Motions in Limine **B, C, D, E, F, G, and J**.

## C.    Elliott's Motions in Limine Daubert: Ellsworth (Doc. 133), Bezzant (Doc. 136) and Medlin (Doc. 139)

Federal Rule of Evidence 702 controls the admissibility of expert opinion testimony.  It provides:

A witness who is qualified as an expert by knowledge, skill,
experience, training, or education may testify in the form of an
opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge
will help the trier of fact to understand the evidence or to determine
a fact in issue;

(b) the testimony is based on sufficient facts or data;

6

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702.

"For expert testimony to be admissible under Rule 702, it must satisfy three basic requirements: (1) the expert witness must be qualified; (2) the testimony must be reliable, and; (3) the testimony must be relevant." *Johnson v. Am. Honda Motor Co. Inc.*, 923 F.Supp.3d 1269, 1272 (D. Mont. 2013). The trial court acts as a gatekeeper by excluding evidence that does not meet standards of relevance and reliability. *Id.* The proponent of the testimony bears the burden of establishing by a preponderance of the evidence that the testimony is admissible under Rule 702. *Lust v. Merrell Dow Pharm. Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

Expert opinion testimony "is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). Assessing reliability requires the Court to consider whether the testimony reflects "scientific knowledge," whether the expert's findings were "derived by the scientific method," and whether the expert's work product was "good science." *Johnson*, 923 F.Supp.3d at 1272. The focus of the 702 inquiry "must be on the principles

7

and methodology underlying an expert's testimony, not the conclusions."

*Kennedy v. Collagen Corp.,* 161 F.3d 1226, 1228 (9th Cir. 1998).

In *Daubert*, the Supreme Court listed the following nonexclusive factors that a court may also consider in assessing reliability: "(1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance with the relevant scientific community." *W.R. Grace*, 455 F.Supp.2d at 1187 citing *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 593-94 (1993). These factors are not determinative, and "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co., LTD. V. Carmichael*, 526 U.S. 137, 150 (1999).

      a.   <u>Richard L. Ellsworth</u>

Elliott argues many of Mr. Ellsworth's opinions are not supported by sufficient facts and data, and that he has not demonstrated that he used reliable principles and methods in reaching his conclusions. Specifically, Elliott seeks to preclude Mr. Ellsworth from testifying at trial concerning welding, cribbing, the vertical plate attachments, and the root cause of the accident. (Doc. 133.)

/ / /

   b.   <u>Kim Bezzant</u>

Elliott contends the Court should preclude Mr. Bezzant from testifying at trial concerning welding quality and Elliott's welding practices.  Elliott asserts Mr. Bezzant is not qualified to opine on the proximate cause of the accident, his opinion is not supported by sufficient facts or data, and he has not shown opinion is the product of reliable principles and methods.  (Doc. 136.)

   c.   <u>Dana Medlin</u>

Elliott seeks to preclude Dr. Medlin from testifying at trial concerning the cause of the accident, and several alleged design and manufacturing defects. Elliott asserts Dr. Medlin's conclusions are not properly substantiated and he has not demonstrated that he used reliable principle and methods in reaching his opinions.  (Doc. 139.)

For the reasons stated at the hearing, Elliott's Motions in Limine to limit the testimony of Plaintiffs' experts, Mr. Ellsworth (Doc. 133), Mr. Bezzant (Doc. 136), and Dr. Medlin (Doc. 139) are taken under advisement.  If the current record is adequate to rule on Elliott's motions, the Court will issue a decision prior to the final pretrial conference without additional hearing.  If additional hearing and testimony is required, it will be set and conducted by video conference.

/ / /

### D.     Plaintiffs' Motion in Limine 6-13 (Doc. 142)

a.     <u>Motion in Limine 6</u>

Plaintiffs argue LYREC should be prohibited from offering testimony and evidence that suggests HDR awarded the Helmut-Iverson project contract to Midwest Power or that HDR drafted the contract.  For the reasons stated at the hearing, the Court cannot find the evidence is clearly inadmissible on all potential grounds at this time.  Accordingly, Plaintiffs' Motion in Limine 6 is **DENIED without prejudice**.

b.     <u>Motion in Limine 7</u>

Plaintiffs argue evidence of whether Ducheneaux was wearing Personal Protective Equipment ("PPE") at the time of the accident is irrelevant and should be excluded.  For the reasons stated on the record, Motion in Limine 7 is **DENIED without prejudice**.  Because evidence regarding the use of PPE may be admissible in some fashion, it is not clearly inadmissible on all potential grounds.

c.     <u>Motion in Limine 8</u>

Plaintiffs seek to exclude any evidence suggesting Ducheneaux was conducting the dead-ending procedure or operating the bucket truck improperly, or that the dead-ending procedure contributed to the tip over.  Plaintiffs argue there is no evidence or expert testimony that suggests that the dead-ending

10

procedure was related to the cause of the accident.  As explained at the hearing, the Court does not have all the evidence before it at the present time to determine whether there is any evidence that the dead-ending procedure contributed to the tip over.  Plaintiffs' Motion in Limine 8 is therefore **DENIED without prejudice**.

        d.    <u>Motion in Limine 9</u>

Plaintiffs argue evidence and testimony about Keller Construction's prior ownership and operation of the bucket truck is irrelevant, and should be excluded.  For the reasons stated on the record, Plaintiff's Motion in Limine 9 is **DENIED without prejudice**.  Given the requirement that Plaintiffs must prove the bucket truck was defective when it left Elliott's possession, evidence relating to Keller Construction's ownership of the truck may be relevant.

        e.    <u>Motion in Limine 10</u>

Plaintiffs argue Ducheneaux's sons receipt of workers compensation benefits, social security benefits and life insurance proceeds should be excluded as evidence under the collateral source rule.  Elliott does not dispute that workers compensation benefits are collateral sources, but argues social security benefits and life insurance proceeds are not.

For the reasons stated on the record, the Court **RESERVES** ruling on Motion in Limine 10.  The parties shall address the issue of whether social

security benefits and life insurance proceeds are collateral sources in their trial briefs, including whether the benefits and any offset may be considered by the jury or by the Court post-trial.  The parties shall not present any evidence or argument at trial concerning social security benefits or life insurance proceeds until the Court has resolved the issue.

   f. <u>Motion in Limine 11</u>

  Plaintiffs seek to exclude Ducheneaux's "possible remote and minor criminal history."  The parties confirmed at the hearing, that they do not know what Ducheneaux's criminal history is at this point.  The Court, therefore, cannot determine whether any such evidence would be potentially relevant or admissible.  Accordingly, Motion in Limine 11 is **RESERVED** until the parties can present what specific criminal history, if any, is at issue.  Again, the parties shall not present any evidence or argument at trial concerning Ducheneaux's prior criminal history until the Court has resolved the issue.

   g. <u>Motion in Limine 12</u>

  Plaintiffs seek to exclude evidence of whether Ducheneaux read Elliott's Operator's Manual for the bucket truck.  For the reasons stated on the record, Motion in Limine 12 is **DENIED without prejudice**.  The evidence may not be used to argue negligence, but it is not clearly inadmissible on all grounds.

/ / /

h.   <u>Motion in Limine 13</u>

Plaintiffs argue evidence regarding whether the mothers of Ducheneaux's children will benefit personally from any damage award should be excluded. Plaintiffs also argue evidence of the mothers' personal relationships or current marital status is irrelevant.  For the reasons stated on the record, the Court finds the evidence is potentially relevant to the mothers' bias and credibility should they testify at trial, and therefore is not inadmissible on all potential grounds.  As such, Motion in Limine 13 is **DENIED without prejudice**.

E.   **Plaintiffs' Motion in Limine 14-17 (Doc. 145)**

Through Plaintiffs' Motions in Limine 14-17, Plaintiffs ask the Court to "set evidentiary boundaries" in light of the strict liability claim against Elliott. Plaintiffs argue evidence of negligence on the part of Ducheneaux, negligence of third parties, or Elliott's compliance with industry standards are irrelevant to the strict liability claim against Elliott and must be curtailed.

a.   <u>Motions in Limine 14 and 15</u>

Montana law recognizes two defenses in strict products liability cases: assumption of the risk and product misuse.  Mont. Code Ann. § 27-1-719(5).  To establish assumption of the risk, the manufacturer must show the user "discovered the defect or the defect was open and obvious and the user or consumer unreasonably made use of the product and was injured by it."  Mont.

13

Code Ann. § 27-1-719(5)(a).  The Montana Supreme Court has clarified the defense of assumption of the risk requires the manufacturer to show the victim had subjective knowledge of the danger and then voluntarily exposed himself to the danger.  *Lutz v. Natl. Crane Corp.,* 884 P.2d 455, 461-62 (1994).  In addition, the victim's use of the product must be unreasonable, meaning it was not reasonably foreseeable to the manufacturer.  *Id.* at 562.

For product misuse, the manufacturer must prove "[t]he product was unreasonably misused by the user or consumer and the misuse caused or contributed to the injury."  Mont. Code Ann. § 27-1-719(5)(b).  "In a Montana products liability case, the question of misuse may go to the jury only if the misuse was not reasonably foreseeable. []  In other words, if it is reasonably foreseeable to a defendant that its product can be or is being used in a specific manner, and a consumer is injured by using the product in that manner, the defendant cannot argue that the plaintiff had misused its product."  *Kenser v. Premium Nail Concepts, Inc.*, 338 P.3d 37, 43 (Mont. 2014) (citing *Lutz*, 884 P.2d at 459).

Here, Elliott's affirmative defenses of product misuse and assumption of risk are still at issue in this action.  Although Plaintiffs argue it is highly unlikely Elliott can prove these defenses, the Court cannot find on the basis of the present record that no evidence exists that could support Elliott's defenses.  Plaintiffs'

Motion in Limine 14 and Motion in Limine 15 are therefore **DENIED without prejudice**.  The parties are cautioned, however, that to be relevant, any evidence related to Ducheneaux's conduct must be specifically tailored to the elements of these affirmative defenses.  General evidence of Ducheneaux's lack of reasonable care is not admissible.

      b.    <u>Motion in Limine 16</u>

At this stage, Plaintiffs have not identified any specific evidence of third party conduct they seek to exclude.  As such, the Court is unable to determine whether any such evidence is admissible or not.  In the event Elliott seeks to introduce evidence of negligence, fault, act, omission, or conduct of a third person or entity other than Defendants and/or Midwest Power, Plaintiffs may reassert their objection at the time of trial.  Plaintiffs' Motion in Limine 16 is therefore, **DENIED without prejudice**.

      c.    <u>Motion in Limine 17</u>

The Court finds that on the present record, Plaintiffs have not shown that evidence of Elliott's compliance with industry standards and regulations would be clearly inadmissible for all purposes.  As Plaintiffs recognize, evidence regarding industry standards is likely to be admissible "regarding issues such as LYREC's liability, Midwest's negligence, the existence of defects, and causation." (Doc. 146 at 13.)  Plaintiffs are correct, however, that such evidence

is generally inadmissible to defeat a strict product liability claim.  *Speaks v. Mazda*, 118 F.Supp.3d 1212, 1226 (D. Mont. 2015); *Malcolm v. Evenflo Corp., Inc.*, 217 P.3d 514, 520-22 (Mont. 2009).  The Montana Supreme Court has explained that although "most courts allow government regulations to be used against manufacturers in negligence cases, the same is not true where the issue is strict liability."  *Lutz v. Nat'l Crane Corp*, 884 P.2d 455, 465 (Mont. 1994). This is because the "issue in products liability cases is not the *conduct* of the 'reasonable person,' but the *condition* of the product."  *Id.* at 462 (emphasis in original).

The Court is without sufficient context to determine whether evidence of compliance with industry standards is clearly inadmissible on all potential grounds.  Rather, the Court will assess the admissibility of any such evidence at trial and in light of the factual context in which it is offered.  Nevertheless, Elliott is cautioned to be mindful that evidence related to the strict product liability claim must be focused on "'the condition of the product,' rather than the 'manufacturer's conduct or knowledge.'"  *Malcolm*, 217 P.3d at 522. Accordingly, Plaintiffs' Motion in Limine 17 is **DENIED without prejudice**.

/ / /

/ / /

/ / /

## II.     MOTIONS TO STRIKE

### A.     Plaintiffs' Motion to Strike LYREC's Animation/Video (Doc. 148)

Plaintiffs move to strike the LYREC's "Model Video Compilation," arguing it is an untimely supplement to LYREC's expert disclosures.  (Doc. 148.)  For the reasons stated on the record Plaintiffs' motion is **DENIED**.  Even if the disclosure was not timely under the Court's scheduling order, any violation is harmless.  Since the video discloses no new information, analysis or opinions, there is very little, if any, prejudice to the plaintiffs.  The disclosure was also made many months in advance of trial and there is no evidence of bad faith or willfulness in not disclosing the video earlier.  See *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx 705, 713 (9th Cir 2010) (outlining factors to consider in determining harmlessness).

The admissibility of the video will be determined at trial, subject to LYREC laying a proper foundation for its admission.  At this stage, however, the Court declines to strike the video.

### B.     Plaintiffs' Motion to Strike LYREC's Affirmative Defenses (Doc. 193)

Plaintiffs move to strike the First, Second, Third, Ninth and Tenth affirmative defenses asserted in LYREC's Answer to Plaintiffs' Second Amended Complaint.  (Doc. 193.)  For the reasons stated on the record, the

motion is **GRANTED in part and DENIED in part.**  The issues raised in LYREC's First, Second and Third affirmative defenses have already been ruled on in connection with LYREC's motion for summary judgment.  (*See* Doc. 164.) Therefore, LYREC's First, Second and Third affirmative defenses are stricken. LYREC's Ninth affirmative defense based on ambiguity of contract and Tenth affirmative defense based on Montana's Safe Place to Work statute have not been determined and will not be stricken at this time.  As discussed at the hearing, however, the pleadings in this matter will be superseded by the final pretrial order to be entered following the final pretrial conference.

### C.   Elliott's Motion to Strike Plaintiffs' March 11, 2021 Expert Disclosures (Doc. 219)

Elliott moves to strike the supplemental expert reports of Plaintiffs' experts Carl Finocchiaro and Kim Bezzant, which were served on March 11, 2020.  Elliott argues the March 11, 2011 expert disclosures are untimely and do not constitute proper supplementation, and therefore, Mr. Finocchiaro and Mr. Bezzant should be precluded from providing any opinions or supporting material contained in the new reports.

Under the Federal Rules of Civil Procedure, an expert witness disclosure must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them; the data or other information considered by the witness in forming them; any exhibits that will be

18

used to summarize or support them," and "the witness's qualifications."
Fed.R.Civ.P. 26(a)(2)(B).  Expert disclosures must be made at the time and in
the sequence ordered by the Court.  Fed.R.Civ.P. 26(a)(2)(D).  A party is
permitted to supplement or correct a disclosure "if the party learns that in some
material respect the disclosure ... is incomplete or incorrect, and if the additional
or corrective information has not otherwise been made known to the other
parties during the discovery process or in writing."  Fed.R.Civ.P. 26(e).  "Any
additions or changes to this information must be disclosed by the time the
party's pretrial disclosures under Rule 26(a)(3) are due."  *Id.*

Supplementation under Rule 26(e) "means correcting inaccuracies, or
filling the interstices of an incomplete report based on information that was not
available at the time of the initial disclosure." *Keener v. United States*, 181
F.R.D. 639, 640 (D. Mont. 1998).  Rule 26(e) does not "give license to sandbag
one's opponent with claims and issues which should have been included in the
expert witness' report."  *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625,
639 (D.Haw. 2008) (quotation omitted).  "To countenance a dramatic, pointed
variation of an expert's disclosure under the guise of Rule 26(e)(1)
supplementation would be to invite the proverbial fox into the henhouse.  The
experienced expert could simply 'lie in wait' so as to express his genuine
opinions only after plaintiff discloses hers." *Keener*, 181 F.R.D. at 641.

If a party fails to comply with the rules regarding expert witnesses under Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed.R.Civ.P. 37(c)(1). The Ninth Circuit has stated the following factors should be considered when determining whether a violation of the expert discovery rules is harmless: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith of willfulness involved in not disclosing the evidence." *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed.Appx. 705, 713 (9th Cir. 2010).

Here, the parties do not dispute that Plaintiffs timely disclosed Mr. Finocchiaro and Mr. Bezzant as experts, and provided their initial expert reports within the deadlines established by the Court's Scheduling Order. Plaintiffs also timely supplemented Mr. Finocchiaro's report on December 9, 2020, pursuant to the Court's order allowing Plaintiffs to supplement their expert disclosures to address Dr. Brown's computer modeling regarding the weight differential on the outriggers of the truck with the front stabilizer extended and retracted. (Doc. 227-2.)

Thereafter, in February 2021, Plaintiffs located and received permission to inspect, photograph and weigh an exemplar Elliott aerial lift bucket truck in

Sallisaw, Oklahoma.  (Doc. 227 at ¶ 20.)  Based on his examination of the

exemplar truck, Mr. Finocchiaro prepared the March 2, 2021 supplemental

report.  (Doc. 221-1.)  Photographs of the exemplar truck were also provided to

Mr. Bezzant to review.  Mr. Bezzant prepared the March 11, 2021 supplemental

report based on his inspection of the photographs.  (Doc. 221-2.)

a.    <u>Mr. Finocchiaro's March 2, 2021 Supplemental Report</u>

Plaintiffs argue the March 2, 2021 supplemental report was necessary

because examination of the exemplar truck revealed that the actual weight on the

outriggers with the front stabilizer deployed was materially different than what

Mr. Finocchiaro estimated in his December 9, 2020 report.  The Court has

reviewed Mr. Finocchiaro's expert reports and concludes the March 2, 2021

report is not "a dramatic, pointed variation" of his December 9, 2020report.

*Keener*, 181 F.R.D. at 641.  Rather, Mr. Finocchiaro's March 2, 2021 report

corrects one of his findings regarding the difference of the actual weight/stress

on the outriggers on the truck with the front stabilizer retracted and extended.  In

the modeling described in his December 9, 2020 report, Mr. Finocchiaro

estimated the stress on the truck's right outrigger was reduced by less than 1%

when the front stabilizer was used.  After weighing the burden on the outriggers

on the exemplar truck, however, Mr. Finocchiaro concluded that the stress on the

outrigger was reduced by 7.8% when the front stabilizer was deployed.  It should

21

be noted that this correction tends to favor Elliott's theory, which estimates the weight differential to be much higher with the stabilizer deployed.  The March 2, 2021 report also affirms two of Mr. Finocchiaro's prior findings, but does not alter his methodology or assert any new conclusions that were not fairly contained within December 9, 2020 report.  Thus, Mr. Finocchiaro's March 2, 2021 report permissibly corrects an inaccuracy that was based on an incorrect estimate, and harmlessly repeats information already contained in his earlier report.  Therefore, Elliott's Motion to Strike is **DENIED** as to Mr. Finocchiaro's March 2, 2011 supplemental report.

      b.   <u>Mr. Bezzant's March 11, 2021 Supplemental Report</u>

In contrast to Mr. Finocchiaro's supplemental report, Mr. Bezzant's March 11, 2011 report does not purport to correct any inaccuracy or fill the interstices of an incomplete report.  Rather, Mr. Bezzant reviewed the photographs of the exemplar truck from Oklahoma and discussed how they appear similar to the truck at issue in this litigation and another exemplar truck from California.  Mr. Bezzant's supplemental report is also not related to Dr. Brown's opinion concerning the front stabilizer.  Accordingly, the Court finds Mr. Bezzant's report does not constitute proper supplementation under Rule 26. The untimely disclosure is also not harmless.  There is no evidence of bad faith or willfulness in the late disclosure.  Nevertheless, like Plaintiffs' objection to

the untimely disclosure of an opinion of Elliott's expert, Stuart Brown (Doc. 93), the disclosure of Mr. Bezzant's report was made well after the expert disclosure deadline, after expert depositions have been conducted, and after the close of discovery.

Elliott's Motion to Strike is therefore **GRANTED** with respect to Mr. Bezzant's March 11, 2021 supplemental report.

## III.   CONCLUSION

The parties are reminded that "[d]enial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial.  Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded."' *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

Accordingly, IT IS HEREBY ORDERED as follows:

1.    Defendant Elliot Equipment Company's Motion in Limine Under Rule 702 (Doc. 127) is **DENIED without prejudice**;

2.    Elliott's Motion in Limine Omnibus (Doc. 130) is **GRANTED in part and DENIED in part**;

3.    Elliott's Motion in Limine Daubert – Ellsworth (Doc. 133) is **RESERVED**;

4.      Elliott's Motion in Limine Daubert – Bezzant (Doc. 136) is

**RESERVED**;

5.      Elliott's Motion in Limine Daubert – Medlin (Doc. 139) is

**RESERVED**;

6.      Plaintiffs' Motion in Limine 6-13 (Doc. 142) is **DENIED without prejudice in part and RESERVED in part**;

7.      Plaintiffs' Motion in Limine 14-17 (Doc. 145) is **DENIED without prejudice**;

8.      Plaintiffs' Motion to Strike LYREC Animation/Video and Objection to Use (Doc. 148) is **DENIED**;

9.      Plaintiffs' Motion to Strike LYREC's Affirmative Defenses (Doc. 193) is **GRANTED in part and DENIED in part**; and

10.     Elliott's Motion to Strike Plaintiffs' March 11, 2021 Expert Disclosures (Doc. 219) is **GRANTED in part and DENIED in part**.

DATED this 25th day of May, 2021.

_____

TIMOTHY J. CAVAN
United States Magistrate Judge